UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 23-CV-61604-VALLE

<u>CONSENT CASE</u>

ROSS SINEL,

    Plaintiff,

v.

MARTIN O'MALLEY,
Commissioner of Social Security,

    Defendant.
_____

**ORDER ON MOTIONS FOR SUMMARY JUDGMENT**

THIS MATTER is before the Court on Plaintiff Ross Sinel's Motion for Summary Judgment (ECF No. 9) ("Plaintiff's Motion") and Defendant Commissioner of the Social Security Administration Martin O'Malley's Motion for Summary Judgment ("Defendant's Motion"). *See* (ECF No. 13). Pursuant to Administrative Order 2023-18, this case is before the undersigned for all proceedings, including trial and entry of final judgment. *See* (ECF Nos. 2, 8).

Accordingly, after due consideration of the record, the Motions, Defendant's Response (ECF No. 13), and Plaintiff's Reply (ECF No. 14), and being otherwise fully advised on the matter, Plaintiff's Motion for Summary Judgment is **DENIED**, Defendant's Motion for Summary Judgment is **GRANTED**, and the Administrative Law Judge's ("ALJ's") decision is **AFFIRMED** for the reasons set forth below.

**I.    PROCEDURAL HISTORY**

On October 3, 2020, Plaintiff applied for disability insurance benefits ("DIB") and supplemental security income ("SSI") under the Social Security Act (the "Act"), 42 U.S.C § 401

*et seq.*, alleging disability beginning March 1, 2020. (R. 275-89).[1] Plaintiff's applications were denied initially and again upon reconsideration. (R. 114-15, 132, 149). Thereafter, Plaintiff requested a hearing, which was held on February 24, 2023, before ALJ Lissette Labrousse. (R. 183-84). Plaintiff (who was represented by counsel) and a Vocational Expert (the "VE") testified at the hearing. (R. 59-73). On March 20, 2023, the ALJ issued a decision (the "ALJ's Decision") denying Plaintiff's applications and finding that Plaintiff was not disabled within the meaning of the Act. (R. 10-23).

Thereafter, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's Decision the Commissioner's "final decision." (R. 1-6); *see Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Plaintiff now seeks judicial review of the ALJ's Decision. (ECF No. 1); *see also* 42 U.S.C. § 405(g). Both parties have moved for summary judgment, and the Motions are ripe for adjudication.

## II.   <u>STANDARD OF REVIEW</u>

Judicial review of the ALJ's Decision is limited to whether there is substantial evidence to support the ALJ's finding and whether the ALJ applied the correct legal standards in making her determination. *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019); *Carson v. Comm'r of Soc. Sec.*, 440 F. App'x 863, 864 (11th Cir. 2011) (internal citations omitted); *see also* 42 U.S.C. § 405(g). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Carson*, 440 F. App'x at 864 (quoting *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004)); *accord Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987). A court, however, "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Winschel v. Comm'r of Soc. Sec.*,

---

[1] All references are to the record of the administrative proceeding filed as part of the Defendant's Answer. *See* (ECF No. 21).

2

631 F.3d 1176, 1178 (11th Cir. 2011) (citation omitted). Even if evidence preponderates against the ALJ's Decision, a court must affirm "if the decision is supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing 42 U.S.C. § 405(g)). Within this narrow role, however, courts do not act as automatons. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). Rather, they "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Id.* (citing *Bloodsworth*, 703 F.2d at 1239).

To qualify for benefits, a claimant must be disabled within the meaning of the Act. *See* 42 U.S.C. § 423 (standard for DIB) and § 1382c (standard for SSI). A claimant is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is one that "results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To determine eligibility, the ALJ conducts a five-step sequential evaluation that considers whether: (i) the claimant is presently unemployed; (ii) the claimant's impairment is severe; (iii) the claimant's impairment meets or equals one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart. P, Appendix 1 (the "Listings"); (iv) the claimant is unable to perform his or her former occupation; and (v) the claimant is unable to perform any other work within the national economy. 20 C.F.R. §§ 404.1520(a)(4) (evaluation process for DIB), 416.920(a)(4) (evaluation process for SSI). An affirmative answer to any of the above leads either to the next question or, on Steps 3 and 5, to a finding of disability. *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir.

1986). A negative answer to any question, other than Step 3, leads to a determination of "not disabled." *Id.*

Importantly, the burden of proof rests on the claimant through Step 4. *Phillips v. Barnhart*, 357 F.3d 1232, 1241 n.10 (11th Cir. 2004), *abrogated on other grounds by Jones v. Soc. Sec. Admin., Comm'r*, No. 22-10507, 2022 WL 3448090 (11th Cir. 2022). At Step 4, the ALJ must consider: (i) the claimant's residual functional capacity ("RFC"); and (ii) the claimant's ability to return to his past relevant work ("PRW"). 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The regulations define RFC as that which an individual is still able to do despite the limitations caused by his impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a). The ALJ will "assess and make a finding about [the claimant's RFC] on all the relevant medical and other evidence" in the case. 20 C.F.R. §§ 404.1520(e), 416.920(e). The RFC assessment is used to determine whether the claimant can return to his PRW under Step 4, and if so, "the ALJ will conclude that the claimant is not disabled." *Phillips*, 357 F.3d at 1238 (citations omitted). If a claimant cannot return to his PRW, then the ALJ proceeds to Step 5. *Id.*

At Step 5, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant "can make an adjustment to other work." 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Phillips*, 357 F.3d at 1239. The ALJ must determine if there is other work available in significant numbers in the national economy that the claimant can perform. *Phillips*, 357 F.3d at 1239. If the claimant can make the adjustment to other work, the ALJ will determine that the claimant is not disabled. *Id.* Conversely, if the claimant cannot make the adjustment to other work, the ALJ will determine that the claimant is disabled. *Id.* The ALJ may determine whether the claimant is able to adjust to other work in the national economy by either: (i) applying the Medical Vocational Guidelines (contained within 20 C.F.R. Part 404,

4

Subpart P, Appendix 2); or (ii) using a VE, who can opine on whether someone with the claimant's limitations can obtain employment in the national economy. *Id.* at 1239-40.

### III.   THE ALJ'S DECISION

After reviewing the evidence and conducting the sequential five-step analysis, the ALJ concluded that Plaintiff "has not been under a disability, as defined in the Social Security Act, from March 1, 2020, through the date of [the] decision." (R. 11, 23).

At Step 1, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since March 1, 2020, the alleged onset date. (R. 12).

At Step 2, the ALJ found that Plaintiff had the following severe impairments: disorders of the cervical and lumbar spine, headaches/migraines, obesity, anxiety, and depression. *Id*.

At Step 3, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the Listings. (R. 13-15).

At Step 4, the ALJ determined that Plaintiff had the RFC to perform light work, with certain non-exertional and exertional limitations. (R. 15). More specifically, Plaintiff could: (i) occasionally climb, stoop and crouch; (ii) frequently balance, kneel, crawl, and reach; (iii) tolerate frequent exposure to vibratory surfaces and tools and workplace hazards; (iv) tolerate moderate noise; (v) perform simple, rote, routine or repetitive tasks; (vi) occasionally interact with supervisors, coworkers, and the general public; and (viii) adapt to routine, predictable and occasional workplace changes. *Id.*

In reaching this conclusion, the ALJ considered Plaintiff's symptoms, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, as well as opinion evidence. *Id.* The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, but found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of

these symptoms were not entirely consistent with the medical evidence and other evidence in the record.  (R. 16).

Based on this RFC and the VE's testimony, the ALJ concluded that Plaintiff was not able to perform his past relevant work as a business development manager (a sedentary, skilled job with an SVP of 7).  (R. 21).  The ALJ thus proceeded to Step 5 of the sequential analysis.  At Step 5, the ALJ found that Plaintiff could perform other jobs in the national economy, such as wire worker, collator operator, and sorter, all jobs with a light exertional level, with an SVP of 2).  (R.22-23).  The ALJ then concluded that given Plaintiff's age, education, and transferrable skills, Plaintiff is not disabled.  (R. 23).

## IV.   DISCUSSION

Plaintiff's interrelated arguments on appeal are that the ALJ's RFC determination was not supported by substantial evidence because the ALJ improperly evaluated the medical opinion of Dr. Lisa Banchik,[2] Plaintiff's neurologist (from Neurology Center of Palm Beach County).  *See generally* (ECF No. 9).  For the reasons discussed below, however, the undersigned finds that the ALJ applied the proper legal standards and that the ALJ's Decision is supported by substantial evidence.  Accordingly, the ALJ's Decision is affirmed.

### A.   The ALJ Properly Evaluated Dr. Banchik's Opinion

First, Plaintiff argues that the ALJ erred by improperly evaluating the opinion of Dr. Lisa Banchik, Plaintiff's treating neurologist.  *Id.*  Dr. Banchik treated Plaintiff almost monthly from approximately April 2018 through February 2023.[3]  *See* (Exhibits 4F, 5F, 7F, 9F, 12F, 13F).

---

[2] In his brief, Plaintiff misspells the doctor's name as "Branchik."  (ECF No. 9 at 1).  The proper spelling, however, is "Banchik"  *See* (R. 737) (the doctor's signed opinion).

[3] Dr. Banchik's treatment notes reflect mostly monthly visits, with some gaps.  For example, between November 2018 and October 2020, Plaintiff had monthly visits.  *See* (R. 599-649).  Plaintiff next visited the doctor in February 2021, but did not return until September 27, 2021.  *Compare* (R. 700) (2/15/2021 visit)*, with* (R. 762) (9/27/2021 visit).  The September 27, 2021 visit

6

In relevant part, Social Security regulations require the ALJ to consider and evaluate every medical opinion received in determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b) ("We will articulate in our determination or decision how persuasive we find all of the medical opinions and all of the prior administrative medical findings in your case record."). Medical opinions are statements "from a medical source about what [the claimant] can still do despite [his] impairment(s) and whether [the claimant] ha[s] one or more impairment-related limitations or restrictions" regarding his ability to perform physical demands (such as sitting, standing, walking, reaching, and handling, among others) and mental demands of work activities (such as understanding, remembering, and maintaining concentration, persistence, and pace). 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2).

For applications dated after March 2017, the persuasiveness of a medical source's opinion (whether treating, examining, or reviewer) depends on whether the opinion: (i) is supported by objective medical evidence and the source's explanation of her opinion; and (ii) is consistent with other evidence in the medical record. 20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2). These factors, referred to as "supportability" and "consistency," are the "most important factors" in the ALJ's analysis.[4] 20 C.F.R. §§ 404.1520c(b)(2) 416.920c(b)(2); *see also Ramos v. Kijakazi*, No. 20-CV-23478, 2021 WL 5746358, at *9 (S.D. Fla. Nov. 9, 2021), *report and recommendation adopted*, 2021 WL 5743332 (S.D. Fla. Dec. 2, 2021); *Bonilla v. Saul*, No. 19-CV-25323, 2020

---

corresponds with Dr. Banchik's Physical Assessment discussed below. *Compare* (R. 762)*, with* (R. 737). After the September 2021 visit/Physical Assessment, Plaintiff resumed monthly visits with Dr. Banchik until approximately February 2023. *See* (R. 738-65).

[4] "Supportability" refers to the relevance of "the objective medical evidence and supporting explanations presented by a medical source to support his or her" opinion. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency" looks to whether "the evidence from other medical sources and nonmedical sources in the claim" are consistent with the medical opinions presented. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

7

WL 9048787, at *4 (S.D. Fla. Oct. 23, 2020), *report and recommendation adopted*, 2021 WL 1198296 (S.D. Fla. Mar. 30, 2021). While the ALJ must articulate how she considered medical opinions from all medical sources, the ALJ need only explain her consideration of the supportability and consistency factors.[5]  *Bonilla*, 2020 WL 9048787, at *5; 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).

Relevant to Plaintiff's Motion, in September 2021, Dr. Banchik completed a Physical Assessment on Plaintiff's behalf. (R. 736-37) (Exhibit 8F) ("Dr. Banchik's opinion"). In her opinion, Dr. Banchik diagnosed Plaintiff with lumbar and cervical radiculopathy, post-traumatic stress disorder, panic/anxiety disorder, migraine headaches, arthritis in his limbs/extremities, panic attacks, and immunocompromised due to removal of his spleen. (R. 736). Dr. Banchik opined that Plaintiff would have to recline or lie down more than the typical 15-minute morning/afternoon break and 30/60-minute lunch break. *Id.* Further, Dr. Banchik found that Plaintiff could only: (i) walk 1-2 city blocks without rest or significant pain; and (ii) sit 3 hours and walk 2 hours in an 8-hour workday, with breaks to recover from each activity. *Id.* In addition, Plaintiff would need unscheduled 5/10-minute breaks every 30 minutes in an 8-hour workday. *Id.* Plaintiff could only occasionally lift less than 10 pounds and never more weight. *Id.* According to Dr. Banchik, Plaintiff was also: (i) limited in repetitive reaching, handling, or fingering; and (ii) limited to 25% use of his hands for grasping, turning, and twisting objects, 30% use of his fingers for fine manipulation, and 65% use of his arms for reaching. *Id.* Lastly, Dr. Banchik opined that Plaintiff was likely to be absent from work more than four times a month due to his impairments/treatments. (R. 737).

---

[5] Additional factors include treatment relationship with the claimant, area of specialization, and "other factors" that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. §§ 404.1520c(c)(3)-(5), 416.920c(c)(3)-(5).

After summarizing the medical record and considering several medical opinions, the ALJ found Dr. Banchik's opinion regarding Plaintiff's physical limitations "not persuasive" as not supported by the doctor's conservative treatment and "not consistent with [Plaintiff's] mainly benign consultative examination findings," conducted on April 7, 2022 by Dr. Alireza Shams. (R. 20); *see also* (R. 766-75) (Exhibit 10F). On appeal, Plaintiff argues that the ALJ erred in assessing Dr. Banchik's opinion by "cherry-pick[ing] evidence that ultimately mischaracterized Plaintiff's medical record." (ECF No. 9 at 9). To support his argument, Plaintiff references numerous pages from an 800-page record and asserts that the ALJ relied on Dr. Shams' single 10-page examination to discount Dr. Banchik's opinion as inconsistent and unsupported. *Id.* at 9-12. Upon a review of the record, however, the Court disagrees for several reasons.

First, judicial review of the ALJ's Decision is limited to whether there is substantial evidence in the record to support the ALJ's finding and whether the ALJ applied the correct legal standards in making her determination. *Biestek*, 587 U.S. at 103; *Carson*, 440 F. App'x at 864 (citations omitted); *see also* 42 U.S.C. § 405(g). Thus, the Court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *MacGregor*, 786 F.2d at 1053 (citing *Bloodsworth*, 703 F.2d at 1239). Here, the ALJ's Decision provides a fulsome summary of Plaintiff's treatment for degenerative cervical and lumbar spine changes between 2020 and 2023, with citation to Exhibit and record pages in the treatment notes of Dr. Banchik and medical findings of consultative examiner Dr. Shams. (R. 16-18). The ALJ wrote:

> The claimant has been diagnosed and treated for degenerative changes in his spine. An August 2020 CT of his cervical spine showed straightening of the cervical lordosis and multilevel degenerative change, including varying degrees of disc space narrowing and spondylosis as well as uncovertebral and facet joint overgrowth with associated foraminal encroachment (Exhibit 3F/25). An undated MRI of his lumbar spine referenced during his consultative examination, noted a partial sacralization of L5 bilaterally with narrowing at the L5-S1 interspace

9

(Exhibit 10F/1). In April 2020, the claimant was treated by his neurologist and reported neck and lower back pain that radiated down to his shoulders, arms and buttocks at times, and he was prescribed medication (Exhibit 4F/15-16). [Plaintiff's] clinical examination findings were significant for signs of muscle spasms in his spine, cervical spine tenderness, decreased cervical spine range of motion, positive straight leg raise testing, soft and non-tender lumbar spine, normal motor strength in his lower extremities, antalgic gait, negative Romberg sign and ability to tandem gait (Exhibit 4F/16). Later in the year, the claimant followed up with his neurologist and reported back pain that had increased somewhat and radiated to his buttocks and increased with bending and lifting heavy objects (Exhibit 5F/48-49). [Plaintiff] also reported chronic cervical pain that radiated to his bilateral shoulders and increased when he performed overhead tasks and was treated with medication management (Exhibit 5F/48-50). [Plaintiff's] clinical examination findings were similar to his earlier findings from April 2020 (Exhibit 5F/49-50). The claimant followed up with his neurologist in February 2021 and reported ongoing symptoms of radicular neck and lower back pain and continued to be treated conservatively with medication management (Exhibit 7F/1-3). On examination, [Plaintiff] continued to demonstrate signs of muscle spasms in his spine, cervical spine tenderness, decreased cervical spine range of motion, positive straight leg raise testing, soft and non-tender lumbar spine, normal motor strength in his lower extremities, antalgic gait, negative Romberg sign and ability to tandem gait (Exhibit 7F/2). Subsequently, [Plaintiff] followed up with his neurologist in September 2021 and reported ongoing symptoms of radicular neck and lower back pain and continued to be treated conservatively with medication management (Exhibit 9F/25-27). He demonstrated signs of muscle spasms in his spine, cervical spine tenderness, decreased cervical spine range of motion, positive straight leg raise testing, soft and non-tender lumbar spine, normal motor strength in his lower extremities, decreased range of motion in his left upper extremity to above shoulder level, antalgic gait, positive Romberg sign and difficulty with his tandem gait (Exhibit 9F/14-15). In March 2022, [Plaintiff] followed up with his neurologist and reported ongoing symptoms of radicular neck and lower back pain and continued to be treated conservatively with medication management (Exhibit 9F/1-3). His clinical examination findings were similar to his earlier findings from September 2021 except he had negative Romberg testing and signs of mild reflex deficits in his upper and lower extremities and hyperesthesia in his cervical and lumbar spine (Exhibit 9F/2-3). Thereafter, [in February 2023, Plaintiff's] most recent treatment with his neurologist noted continued conservative treatment consisting of medication management for ongoing symptoms of radicular neck and lower back pain (Exhibit 12F/3-5, 16-18, 13F/3-6). [Plaintiff's] clinical examination findings were similar to his earlier findings from March 2022 (Exhibit 12F/5, 17, 13F/5).

[Plaintiff] had a consultative examination in internal medicine in April 2022 and reported being in a motor vehicle accident with residual symptoms of neck pain that radiated to both shoulders (Exhibit 10F/1). His consultative examination findings were significant for signs of lumbar spine tenderness, reduced lumbar spine range of motion, paraspinal muscle spasm, supple neck, normal range of

motion of the cervical spine, normal range of motion of the upper and lower extremities except with bilateral shoulder flexion (90/180) and hip flexion (80/90), normal motor strength in the upper and lower extremities except for the bilateral shoulders (3/5), intact sensation and reflexes in his upper and lower extremities and positive straight leg raise testing (Exhibit 10F/3-4). He also demonstrated signs of normal grip strength, normal fine manipulation, intact hand and finger dexterity, ability to get on and off an examination table, normal gait and stance and positive tandem walking and heel to shin testing with no use of an assistive device (*Id.*). He was diagnosed with pain in the neck, pain in the lower back, status post splenectomy, depression and anxiety (Exhibit 10F/5).

(R. 16-17).

In reviewing whether the ALJ's Decision is supported by substantial evidence, the undersigned must read the Decision as a whole. *Raper v. Comm'r of Soc. Sec.*, 89 F.4th 1261, 1265 (11th Cir. 2024) ("[W]hen the ALJ's decision is read as a whole—it is clear why the ALJ found the opinion inconsistent with the record."). Thus, although the ALJ's review of the medical evidence (quoted above) is in a different section than the ALJ's evaluation of the medical opinions, the Decision read as a whole provides substantial evidence supporting the ALJ's assessment of Dr. Banchik's medical opinion. *See, e.g.*, *Bajor v. Kijakazi*, No. 22-CV-60540, 2023 WL 8239255, at *4 (S.D. Fla. Mar. 27, 2023) (affirming ALJ assessment of medical opinion although evaluation was in different section of decision).

1. *The ALJ Properly Evaluated Dr. Banchik's Opinion as Inconsistent with Other Medical Sources*

The ALJ properly noted that Dr. Banchik's opinion was inconsistent with Plaintiff's treatment records, which contained both benign and non-benign findings. *See, e.g.*, *Venturella v. Kijakazi*, No. 21-CV-61838, 2022 WL 4110699, at *5 (S.D. Fla. Aug. 18, 2022), *report and recommendation adopted*, 2022 WL 4110339 (S.D. Fla. Sept. 8, 2022) (affirming ALJ's conclusion that medical opinion was unpersuasive where evaluations showed claimant had tenderness in the cervical spine and loss of full spine flexion, but also revealed normal range of motion, no gross deformities, and normal muscle strength in upper and lower extremities).

11

In evaluating Dr. Banchik's opinion, the ALJ accurately contrasted it with Dr. Shams' April 2022 consultative examination findings. (R. 20). The ALJ noted that Dr. Shams diagnosed Plaintiff with neck and lower back pain, depression, anxiety, and status post splenectomy. (R. 18); *see also* (R. 770). As noted above, the ALJ also summarized the consultative examination findings when discussing the medical evidence. Thus, Plaintiff's arguments notwithstanding, the ALJ's comparison of Dr. Banchik's opinion with Dr. Shams' consultative examination supported the ALJ's conclusion.

Moreover, in finding that Dr. Banchik's opinion was inconsistent with the medical records, the ALJ also considered the opinion of the State Agency medical consultants (Drs. Prianka Gerrish and Sunita Patel) who reviewed Plaintiff's medical records. (R. 19-20). State Agency consultants are highly qualified specialists who are also experts in the Social Security disability evaluation. *See* 20 C.F.R. §§ 404.1513a(b)(1), 416.913a(b)(1); SSR 17-2p, 2017 WL 3928306, at *3 (Mar. 27, 2017). Here, the ALJ found the opinions of the State Agency consultants "mostly persuasive." (R. 19). More specifically, regarding Plaintiff's postural and environmental limitations, the State Agency consultants found that Plaintiff could: (i) work at a light exertional level; (ii) occasionally climb ramps/stairs, ladders, ropes and scaffolds, stoop, and crawl; (iii) frequently balance, kneel, and crouch; and (iv) should avoid concentrated exposure to noise, vibration and hazards. (R. 102-04). The ALJ further noted that upon reconsideration, Plaintiff had similar limitations, except that he could frequently reach and there were no limitations on noise. (R. 19) (citing Exhibit 7A/7-11). Nevertheless, the ALJ determined that the State Agency opinion that Plaintiff could only occasionally crawl was unpersuasive as "inconsistent with consultative examination signs of normal range of motion in his upper and lower extremities except with bilateral shoulder flexion (90/180) and hip flexion (80/90), normal motor strength in the upper and lower extremities except for the bilateral shoulders (3/5), intact sensation and reflexes in his upper and lower extremities,

12

ability to get on and off an examination table and normal gait and stance (Exhibit 10F/5)." (R. 19-20).  Thus, the ALJ's thorough consideration of the various medical opinions belies Plaintiff's argument that the ALJ simply relied on Dr. Shams' consultative examination to discount Dr. Banchik's opinion.[6]  *See, e.g., Shell v. Kijakazi*, No. 20-CV-62527, 2022 WL 4238248, at *6 (S.D. Fla. Sept. 5, 2022) (concluding that, contrary to plaintiff's arguments, ALJ had fully evaluated medical opinions), *report and recommendation adopted*, 2022 WL 4235045 (S.D. Fla. Sept. 14, 2022); *Damato v. Kijakazi,* No. 20-CV-61949, 2022 WL 616800, at *8 (S.D. Fla. Feb. 14, 2022) (concluding that ALJ had sufficiently articulated evaluation of medical sources, after review and accurate summary of thousands of pages of medical records), *report and recommendation adopted,* 2022 WL 612617 (S.D. Fla. Mar. 2, 2022).

> 2. *The ALJ Properly Concluded that Dr. Banchik's Opinion Was Not Supported by the Doctor's Treatment Records*

As well, the ALJ properly noted that Dr. Banchik's opinion was unsupported by the doctor's "conservative treatment for the claimant's physical impairments, consisting of medication management with no evidence of any physical therapy, steroid injections or orthopedic treatment for Plaintiff's spinal conditions (Exhibit 4F/15-16, 5F/48-50, 7F/1-3, 9F1-3, 25-27, 12F/3-5, 16-18, 13F/3-6." (R. 20).  Notably, Plaintiff does not challenge the ALJ's citation to the record.  Rather, Plaintiff argues that there is other evidence in Dr. Banchik's treatment notes reflecting

---

[6] Relatedly, Plaintiff's reliance on his treatment dating back to 2013 with orthopedic specialist Dr. Frederic Gerard does not support his position that the ALJ erred in evaluating Dr. Banchik's 2021 opinion. (ECF No. 9 at 3-4, 11-12).  First, Dr. Gerard's medical records from 2013 to 2016, (Exhibit 1F), long predate Plaintiff's March 2020 alleged onset date and are of limited relevance. *Aldao v. Colvin*, No. 14-CV-22726, 2016 WL 3583632, at *8 (S.D. Fla. Feb. 29, 2016), *report and recommendation adopted*, 2016 WL 1236899 (S.D. Fla. Mar. 30, 2016) ("Medical evidence that predates the alleged disability onset date is ordinarily not relevant to evaluating a claimant's disability.") (citations omitted).  Moreover, even if relevant, Dr. Gerard's treatment notes are consistent with the ALJ's finding that Plaintiff's severe impairment include disorders of the cervical and lumbar spine, (R. 12), and do not support a different assessment of Dr. Banchik's medical opinion.

"extensive cervical and lumbar deficiencies, including spinal tenderness, restricted range of motion, antalgic gait, spasms, and more." (ECF No. 9 at 9-10). The ALJ, however, was not required to discuss every piece of evidence in evaluating Dr. Banchik's opinions. *See Herron v. Soc. Sec. Admin., Com'r*, 649 F. App'x 781, 783 (11th Cir. 2016) ("[T]here is no 'rigid requirement that the ALJ specifically refer to every piece of evidence, so long as the ALJ's decision is not a broad rejection' that leaves [the] Court with insufficient information to conclude that the ALJ considered the claimant's medical condition as a whole.") (citation omitted); *Lewen v. Comm'r of Soc. Sec.*, 605 F. App'x 967, 969 (11th Cir. 2015) (citation omitted). The ALJ wrote that Plaintiff:

> managed his spinal conditions conservatively with medication management with no evidence of any physical therapy, steroid injections, or orthopedic treatment. [Plaintiff's] examination findings did show ongoing signs of spinal tenderness, reduced spinal range of motion and muscle spasms, but inconsistent signs of ambulatory and neurological defects.  For example, [Plaintiff's] clinical examination findings showed signs of an impaired gait and difficulty ambulating at times, but this was not consistent.  Notably, there were signs of claimant's ability to tandem walk and no neurological deficits in his lower extremities during visits with his neurologist and his consultative examination findings were significant for signs of normal gait and stance and normal fine manipulation and hand and finger dexterity. If [Plaintiff] were limited to greater levels, one would expect consistent findings indicative of such.

(R. 16).

Moreover, the record confirms that between 2020 and 2023, despite Plaintiff's physical impairments, Dr. Banchik recommended conservative treatment, including: "walking for cardiac workout" and doing "something aerobic each day," "physical therapy to help with pain," and the necessity of utilizing non-opioid alternatives for pain. (R. 520, 522, 524, 526, 527, 529, 533, 535, 537, 539, 544, 549, 551, 638, 643, 714, 748, 752, 756, 760, 764, 783, 786, 789, 792, 795, 798, 801, 804, 807, 810, 813, 816).  This record of conservative treatment undercuts Dr. Banchik's opinion that Plaintiff had more disabling physical impairments.

Additionally, although the record may contain some evidence to support Plaintiff's argument of greater physical limitations, the issue is not whether some evidence might support Plaintiff's allegations. *See Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005); *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003); *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 602 (11th Cir. 2017) (applying deferential standard to support ALJ's conclusion that claimant could perform light work even though record could support a contrary conclusion). Rather, the Court "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *MacGregor*, 786 F.2d at 1053. Nor is it for the Court to "decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ]." *Winschel*, 631 F.3d at 1178 (citation omitted).

Against this backdrop, the undersigned finds that the ALJ properly evaluated Dr. Banchik's opinion and adequately explained both the consistency and supportability factors. 20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2). In so doing, the ALJ was not required to use any particular language as long as the ALJ applied the proper legal standards and substantial evidence supports her decision. *Gleicher v. Kijakazi*, No. 21-CV-60014, 2022 WL 16829691, at *6 (S.D. Fla. Sept. 2, 2022) (affirming ALJ's assessment of consistency and supportability factors to find medical opinion unpersuasive), *report and recommendation adopted*, 2022 WL 4596706 (S.D. Fla. Sept. 30, 2022). Moreover, the ALJ was not required to discuss every piece of evidence or articulate "good cause" to discount Dr. Banchik's opinion. Here, "it is not as if the ALJ provided 'no explanation'" for her Decision. *Raper*, 89 F.4th at 1276 n.14 (emphasizing that there are "no magic words" to discount medical opinions. "What matters is whether the ALJ states with at least some measure of clarity the grounds for her decision.") (citing *Winschel*, 631 F.3d at 1179).

Accordingly, after reviewing the record as a whole, the undersigned finds that substantial evidence supports the ALJ's evaluation of Dr. Banchik's opinion. *See e.g.*, *Broomfield v. Kijakazi*,

15

No. 22-CV-60879, 2023 WL 6376456, at *9 (S.D. Fla. Sept. 29, 2023) (concluding that ALJ properly evaluated medical opinions based on regulatory factors of consistency and supportability); *Bryant v. Kijakazi*, No. 20-CV-61819, 2023 WL 7413594, at *6 (S.D. Fla. July 7, 2023), *report and recommendation adopted*, 2023 WL 7410371 (S.D. Fla. Nov. 9, 2023) (same); *Gleicher*; 2022 WL 16829691, at *6; *Claude v. Kijakazi*, No. 21-CV-60104, 2022 WL 4449384, at *7 (S.D. Fla. Sept. 9, 2022), *report and recommendation adopted*, 2022 WL 4448247 (S.D. Fla. Sept. 23, 2022); *Koda v. Kijakazi*, No. 21-CV-60934, 2022 WL 6566495, at *8 (S.D. Fla. Aug. 26, 2022), *report and recommendation adopted*, 2022 WL 4354042 (S.D. Fla. Sept. 20, 2022).

### B.     Substantial Evidence Supports the ALJ's RFC Determination

Plaintiff's challenge to the ALJ's assessment of Dr. Banchik's medical opinion forms the basis for Plaintiff's related argument that the ALJ's RFC determination is "not supported by substantial evidence." (ECF No. 9 at 1); *see also id.* at 8 (the "RFC was the result of the ALJ's failure to properly evaluate the physical opinions of Dr. Banchik."). According to Plaintiff, Dr. Banchik's opinion, if accepted, would preclude Plaintiff from performing even sedentary level jobs. *Id.* at 12-13.

A claimant's RFC is the most a claimant can do despite the limitations caused by his impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *Phillips*, 357 F.3d at 1238. The RFC is based on all the relevant evidence in the record and is used at Step 4 of the sequential evaluation to decide if a claimant can do his past relevant work and, if necessary, at Step 5 to decide if a claimant can adjust to other work that exists in significant numbers in the national economy. 20 C.F.R. §§ 404.1545(a)(5)(i)-(ii), 416.945(a)(5)(i)-(ii). Social Security regulations classify the physical exertion requirements for work as sedentary, light, medium, heavy, and very heavy. *See* 20 C.F.R. §§ 404.1567, 416.967. Along with age, education, and work experience, the ALJ considers a claimant's RFC in determining whether the claimant can work. *Lewis v. Callahan*,

125 F.3d 1436, 1440 (11th Cir. 1997) (citation omitted). Ultimately, the responsibility for determining a claimant's RFC rests with the ALJ, and the ALJ is not required to give any special significance to the opinion of medical sources in determining the RFC. *Lewen*, 605 F. App'x at 968 (upholding ALJ's RFC finding that accounted for medical opinions not specifically discussed by the ALJ).

Here, the ALJ concluded that Plaintiff could perform light work, with certain exertional and non-exertional limitations.[7] (R. 15). More specifically, Plaintiff could: (i) occasionally climb, stoop, and crouch; (ii) frequently balance, kneel, crawl, and reach; (iii) tolerate frequent exposure to vibratory surfaces and tools and workplace hazards; (iv) tolerate moderate noise; (v) perform simple, rote, routine or repetitive tasks; (vi) occasionally interact with supervisors, coworkers, and the general public; and (viii) adapt to routine, predictable, and occasional workplace changes. *Id.* As discussed above, the ALJ fully considered the medical record and properly evaluated Dr. Banchik's opinion as unpersuasive because it was inconsistent with the medical record and unsupported by the doctor's treatment notes. *See supra* Section IV.A.1-2. Moreover, the ALJ's RFC is consistent with the exertional limitations found by the State Agency consultants. *Compare* (R. 15)*, with* (R. 84-85, 102, 123, 140) (opinion of State Agency consultants who opined that Plaintiff could only occasionally lift and/or carry 20 pounds and frequently lift and/or carry 10 pounds). Accordingly, the ALJ properly determined Plaintiff's RFC. *See, e.g.*, *Est. of White v. Saul*, No. 19-CV-61745, 2020 WL 5351064, at *15 (S.D. Fla. Aug. 26, 2020), *report and recommendation adopted*, 2020 WL 5291966 (S.D. Fla. Sept. 4, 2020) (affirming ALJ's RFC determination where it was supported by opinion of State Agency consultant). Ultimately, the ALJ's Decision considered Plaintiff's impairments as a whole. *See, e.g., Borges v. Comm'r of*

---

[7] Light exertional work is defined as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b).

17

*Soc. Sec.*, 771 F. App'x 878, 882 (11th Cir. 2019). Accordingly, the undersigned finds that substantial evidence supports the ALJ's RFC determination.

## V. CONCLUSION

For the reasons stated above, it is hereby **ORDERED AND ADJUGED** that:

1. Plaintiff's Motion for Summary Judgment (ECF No. 9) is **DENIED,** Defendant's Motion for Summary Judgment (ECF No. 13) is **GRANTED**, and the ALJ's Decision is **AFFIRMED**.

2. The Clerk is directed to enter judgment in favor of Defendant, to terminate all pending motions, and to **CLOSE** the case.

**DONE AND ORDERED** at Chambers in Fort Lauderdale, Florida on September 27, 2024.

*[signature]*

ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc: All counsel of record

18